## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JEREMY HARLEY,                          )
                                        )
                    Petitioner,         )
                                        )
        v.                              )          Case no. 4:16cv01753 PLC
                                        )
STANLEY PAYNE,[1]                       )
                                        )
                    Respondent.         )

### MEMORANDUM AND ORDER

Petitioner Jeremy Harley seeks federal habeas relief from a Missouri state court judgment entered after a jury trial.[2]  See 28 U.S.C. § 2254.  Respondent filed a response to the petition, along with exhibits consisting of copies of materials from the underlying state court proceedings.  After careful consideration, the Court denies the petition on its merits.[3]

### I.  Background

### Trial court proceedings

---

[1]  The Court substitutes as the Respondent Stanley Payne, the present Warden of the Eastern Reception, Diagnostic and Correctional Center ("ERDCC") where Petitioner is incarcerated, in lieu of the person who was the Warden of the ERDCC and named as the Respondent at the time Petitioner filed this habeas proceeding. Fed. R. Civ. P. 25(d).

[2]  Petitioner attached to his habeas petition a copy of the post-conviction motion court's findings of fact and conclusions of law, as well as a copy of his brief in his post-conviction appeal.  See ECF No. 1-1.  In resolving the issues in this habeas proceeding, the Court considered and refers to the complete copies of materials from the state court record filed by Respondent, rather than the portions of the state court record Petitioner provided with his habeas petition.  Respondent's exhibits include the post-conviction motion court's findings of fact and conclusions of law, as well as Petitioner's brief in his post-conviction appeal.  See Resp't Ex. F at 29-32 and Resp't Ex. G, respectively.

[3]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the authority of the undersigned to conduct all proceedings and enter judgment in this civil matter.

By a second amended felony information filed the last day of Petitioner's second jury trial,[4] the State of Missouri charged Petitioner with committing on June 12, 2011:  child kidnapping in violation of Missouri Revised Statutes § 565.115 (Count 1) and either statutory sodomy in the first degree in violation of Missouri Revised Statutes § 566.062 or, alternatively, child molestation in the first degree in violation of Missouri Revised Statutes § 566.067 (Count II).  With respect to the child kidnapping charge in Count I, the State specifically alleged Petitioner, who was not related to the minor victim (who is referred to as "S.H.C."), "knowingly and unlawfully removed S.H.C. [who was under the age of fourteen years] from" a specified address in Moscow Mills, in Lincoln County, Missouri.[5]  For the first-degree statutory sodomy charge in Count II, the State alleged Petitioner "for the purpose of arousing or gratifying the sexual desire of [Petitioner], had deviate sexual intercourse with S.H.C. . . . , who was then less than twelve years old, by penetrating her anus with his finger."[6]  With regard to the alternative first-degree child molestation charge in Count II, the State charged Petitioner with "knowingly subject[ing] S.H.C. . . ., who was less than fourteen years old to sexual contact by touching the anus of S.[H.]C."[7]

Prior to the filing of the second amended information, the State of Missouri had charged Petitioner with committing on June 12, 2011:  child kidnapping in violation of Missouri Revised Statutes § 565.115 (Count I) and first-degree statutory sodomy in violation of Missouri Revised

---

[4]  Second am. felony information, filed Oct. 12, 2012, Legal File Resp't Ex. D at 50-52.

[5]  Second am. felony information, filed Oct. 12, 2012, Legal File, Resp't Ex. D at 50.

[6]  Second am. felony information, filed Oct. 12, 2012, Legal File, Resp't Ex. D at 50.

[7]  Second am. felony information, filed Oct. 12, 2012, Legal File, Resp't Ex. D at 51.

Statutes § 566.062 (Count II).[8]  The allegations in support of those two charges were identical to the allegations supporting the same charges in the second amended felony information.[9]  None of the charging documents before the second amended felony information, however, contained the alternative first-degree child molestation charge that is in Count II of the second amended felony information.[10]  The first jury trial, conducted in June 2012,[11] and focusing only on the child-kidnapping and first-degree statutory sodomy charges in the (first) amended felony information, ended when the trial court declared a mistrial after the jury "advise[d] the Court that [it was] unable to reach a verdict."[12]

Prior to the first trial, the trial court granted Petitioner's unopposed motion  for a change of venue from Lincoln County to Pike County, Missouri.[13]  The State filed, before the first trial, notices of its intent to rely on (1)  Missouri Revised Statutes § 491.075 to support its introduction at trial  of  statements S.H.C. made to various individuals on or about June 15, 2011, and (2) Missouri Revised Statutes § 492.304 to support its introduction at trial of "a visual and oral

---

[8]  Felony compl., filed June 15, 2011, Legal File, Resp't Ex. D at 17-20; Felony information, filed July 28, 2011, Legal File, Resp't Ex. D at 25-27; Am. felony information, filed Mar. 19, 2012, Legal File, Resp't Ex. D at 39-40.

[9]  Felony compl., filed June 15, 2011, Legal File, Resp't Ex. D at 17, 18; Felony information, filed July 28, 2011, Legal File, Resp't Ex. D at 25; Am. felony information, filed Mar. 19, 2012, Legal File, Resp't Ex. D at 39. The first-degree sodomy charge in Count II of the felony complaint and felony information also included "removing her underwear and" before "penetrating her anus with his finger."  Felony compl., filed June 15, 2011, Legal File, Resp't Ex. D at 18; Felony information, filed July 28, 2011, Legal File, Resp't Ex. D at 25.

[10]  Felony compl., filed June 15, 2011, Legal File, Resp't Ex. D at 17-20; Felony information, filed July 28, 2011, Legal File, Resp't Ex. D at 25-27; Am. felony information, filed Mar. 19, 2012, Legal File, Resp't Ex. D at 39-40.

[11]  See, e.g., June 6, 2012 through June 8, 2012 entries on docket sheet, Legal File, Resp't Ex. D at 13-14.

[12]  Order, dated June 8, 2012, Legal File, Resp't Ex. D at 41; see also June 8, 2012 entry on docket sheet, Legal File Resp't Ex. D at 14.

[13]  Pet'r mot. change venue, filed Aug. 8, 2011, Legal File, Resp't Ex. D at 29-30; Order, filed Aug. 15, 2011, Legal File, Resp't Ex. D at 31; Trial Tr., Resp't Ex. A, at 11.

recording" of a statement S.H.C. made to Mindy Skaggs on June 15, 2011, at the Child Assessment Center ("CAC").[14]   After a pretrial hearing, the trial court granted the State's notices of intent to use S.H.C.'s statements at trial.[15]   With respect to the notice the State filed pursuant to Section 491.075, the trial court expressly found under "the totality of the circumstances [that the] statements [were] reliable . . . based upon the time, content and circumstances of the statements," were "supported by sufficient indicia of reliability," and were "admissible in their entirety at trial, subject to other valid objections."[16]

In addition to filing notices of its intent to introduce statements S.H.C. made shortly after the incident, the State filed prior to the first trial notices of its intent to use at trial several identified business records and a laboratory report.[17]   Before the second trial, the State also filed a motion in limine.[18]   The trial court resolved the State's motion in limine, and granted Petitioner's waiver of jury sentencing, before the second trial began.[19]

During the second trial in October 2012, the State introduced various exhibits, as well as the testimony of:

(1)  S.H.C., who was five years old at the time of the June 2011 incident;[20]

---

[14] State's second am. notice of intent rely upon Section 491.075 RSMo, filed Nov. 4, 2011, Legal File, Resp't Ex. D at 32; State's notice pursuant to Section 492.304 RSMo, filed Nov. 14, 2011, Legal File, Resp't Ex. D at 33.

[15] Trial Tr., Resp't Ex. A, at 14-106; Orders, filed Jan. 9, 2012, Legal File, Resp't Ex. D at 34 and 35.

[16] Order, filed Jan. 9, 2012, Legal File, Resp't Ex. D at 34.

[17] State's notice of intent to use business records pursuant to Section 490.392 RSMo, filed Mar. 12, 2012, Legal File, Resp't Ex. D at 36-37; State's intention to rely on lab analysis, filed Mar. 12, 2012, Legal File, Resp't Ex. D at 38.

[18] State's "General mot. in Limine," filed Oct. 4, 2012, Legal File, Resp't Ex. D at 42-48;

[19] Trial Tr., Resp't Ex. A at 108; Memo, filed Oct. 10, 2012, Legal File, Resp't Ex. D at 49.

[20] Trial Tr., Resp't Ex. A at 235-62.

4

(2) Desirae Prinster, who was eighteen years old at the time of the incident, had dated Petitioner until the incident, discovered S.H.C. in her nightgown and without her panties on in a bed in a home other than S.H.C.'s home and in the presence of Petitioner, returned S.H.C. to S.H.C.'s mother promptly after the discovery, and then drove S.H.C. and her mother to the hospital;[21]

(3)  Margie Harrell, the director of 911 for Lincoln County;[22]

(4)  Ms. Skaggs, a forensic interviewer who interviewed S.H.C. at the CAC;[23]

(5)  Jullian Chapman, S.H.C.'s mother;[24]

(6)  Roylee Moore, who was the boyfriend of S.H.C.'s mother and had lived at S.H.C.'s home for approximately four years before the incident;[25]

(7)  Adam Flores, a friend of Prinster who lived with Petitioner and Prinster in Flores's parents' home and whose nickname was "Spock";[26]

(8)  Dan Brown, a Sergeant with the Moscow Mills Police Department who responded to the 911 call regarding this incident;[27]

(9)  Ryan Reingeisen, who at the time of the incident was a patrolman for the Moscow Mills Police Department and went to S.H.C.'s home approximately ten hours after the incident,

---

[21]  Trial Tr., Resp't Ex. A at 263-314; see also id. at 453, 512.

[22]  Trial Tr., Resp't Ex. A at 316-24.

[23]  Trial Tr., Resp't Ex. A at 325-52.

[24]  Trial Tr., Resp't Ex. A at 352-431.

[25]  Trial Tr., Resp't Ex. A at 434-72.

[26]  Trial Tr., Resp't Ex. A at 473-501.

[27]  Trial Tr., Resp't Ex. A at 501-12.

where he found a lighter outside the residence (beneath a window with a broken screen) that Prinster identified as Petitioner's and took pictures of the window area, and then returned approximately two days later to obtain the nightgown S.H.C. wore at the time of the incident;[28]

(10) Richard Tragasz, a social services worker for the Children's Division, Missouri Department of Social Services, Lincoln County, who investigated the report of the kidnapping;[29]

(11) Dr. Chantri Trinh, who at the time of the incident was an emergency room physician at the Lincoln County Medical Center and examined S.H.C. shortly after the incident;[30]

(12) Stephanie Whitaker, a pediatric medical social worker at St. Louis Children's Hospital who met with S.H.C. and her mother later on June 12, 2011;[31]

(13) Angela Brown, an emergency room nurse at St. Louis Children's Hospital who was present during S.H.C.'s Sexual Assault Forensic Exam ("SAFE") conducted on June 12th, during which two anal fissures were discovered on S.H.C.;[32] and

(14) Lieutenant Nicholas Brimager, who at the time of the incident was a detective with the Moscow Mills Police Department and investigated this incident, including by reading Petitioner his Miranda rights, attending a forensic interview with S.H.C., and taking the SAFE materials from the hospital to the police department.[33]   Petitioner introduced Mr. Moore's statement to the police and testified during trial.[34]

---

[28]  Trial Tr., Resp't Ex. A at 513-32.

[29]  Trial Tr., Resp't Ex. A at 532-57.

[30]  Trial Tr., Resp't Ex. A at 557-74.

[31]  Trial Tr., Resp't Ex. A at 575-95.

[32]  Trial Tr., Resp't Ex. A at 595-610.

[33]  Trial Tr., Resp't Ex. A at 610-23; and in rebuttal, Trial Tr., Resp't Ex. A at 668-76.

The trial court denied Petitioner's oral motions for judgment of acquittal and/or new trial at the close of the State's evidence and at the close of all the evidence.[35]  The jury found Petitioner guilty of child kidnapping (Count I) and first-degree child molestation (Count II), and not guilty of first-degree statutory sodomy.[36]  After hearing argument on Petitioner's written post-trial motion for new trial and/or judgment of acquittal, to which the State filed a memorandum in opposition, the trial court denied Petitioner's motion and sentenced him on each count to a fifteen-year term of imprisonment, to be served concurrently.[37]

### Direct appeal

Petitioner raised one point in his direct appeal.[38]  Specifically, Petitioner challenged as error the trial court's denial of his motions for judgment of acquittal at the close of the State's evidence and all the evidence with respect to, and the sentencing of him on, the first-degree child molestation charge because, Petitioner argued, there was insufficient evidence to establish he "subject[ed] S[H]C to sexual contact by touching [her] anus with his finger."[39]  The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties only setting forth the reasons for the order.  See State v. Harley, No. ED99416 (Mo. Ct. App. filed April 8, 2014), Resp't Ex. E.  In

---

[34]  Trial Tr., Resp't Ex. A at 631-67.

[35]  Trial Tr., Resp't Ex. A at 628-30 and 678.

[36]  Verdicts, Legal File, Resp't Ex. D, at 68-70; see also Trial Tr., Resp't Ex. A at 727.

[37]  Trial Tr., Resp't Ex. A at 754; J., Legal File, Resp't Ex. D, at 83-85.

[38]  Pet'r Br. on direct appeal, Resp't Ex. B, at 12, 13.

[39]  Pet'r Br. on direct appeal, Resp't Ex. B, at 12, 13.

relevant part, the Court of Appeals viewed the evidence "in the light most favorable to the State" and found the following facts:

> [Petitioner] and his girlfriend, Desirae Prinster ("Prinster"), lived together in a trailer home along with their friend Adam and Adam's parents, who owned the trailer.  On the evening of [June 12, 2011, Petitioner] attended a graduation party, while Prinster went out with a friend.  The graduation party was hosted by [S.H.C.]'s parents, who were friends with Prinster and [Petitioner] and who lived less than a quarter of a mile away in the same trailer park.
>
> [S.H.C.]'s parents put [S.H.C.], who was five years old, and her younger brother to bed around 9:30 p.m. before people began arriving for the graduation party.  A total of about 10 people attended the party, which lasted into the early morning hours.  At some point, [Petitioner] left the party while the other partygoers remained at the trailer.
>
> Around 3 a.m., Prinster returned home with her friend.  Upon entering the trailer, Prinster found [Petitioner] in a back bedroom that was normally off-limits and saw someone under the covers of the bed.  Prinster realized the person in the bed was [S.H.C.].  Prinster picked [S.H.C.] up and noticed that she was not wearing underwear beneath her nightgown.  Prinster saw [S.H.C.]'s underwear in [Petitioner]'s back pocket.  Prinster asked [S.H.C.] what happened, and [S.H.C.] told Prinster that [Petitioner] poked her butt with his finger.  Prinster took [S.H.C.] back to [S.H.C.'s] parents' home, where [S.H.C.] told her mom that [Petitioner] had taken her out of her bedroom window, carried her to his trailer, t[aken] off her underwear, and touched her butthole with his finger.

Harley, No. ED99416, slip op., Resp't Ex. E, at 2-3.  After discussing various witnesses' testimony, the Court of Appeals concluded "a reasonable jury could infer that [Petitioner] touched [S.H.C.]'s anus" and "the State presented sufficient evidence from which a reasonable trier of fact could have determined that [Petitioner] subjected [S.H.C.] to sexual contact by touching her anus with his finger."  Id. at 7, 8.  The Court of Appeals issued its mandate on May 2, 2014.[40]

<u>Post-conviction proceedings</u>

---

[40]  See May 2, 2014 entry on docket sheet for State v. Harley, No. ED99416 (Mo. Ct. App. filed Dec. 19, 2012) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited May 26, 2020)).

Petitioner filed a pro se motion for post-conviction relief ("PCR") setting forth claims that the State failed to make a submissible case and his trial attorney provided ineffective assistance of counsel due to "family trouble during trial," the absence of "his assistant . . . at trial," and his failure to call witness Amanda Buechter.[41]   Through appointed counsel, Petitioner filed an amended PCR motion, asserting four claims that his trial attorney provided ineffective assistance of counsel and requesting an evidentiary hearing.[42]   Specifically, Petitioner asserted his trial attorney unreasonably failed:  (1) "to call Amanda Buechter to testify at [Petitioner]'s trial"; (2) "to object when the prosecutor engaged in misconduct by repeatedly asking [Petitioner] about the credibility of other witnesses, including" S.H.C.; (3)

> to establish that in previous testimony (in her deposition and her testimony in the first trial) . . . [S.H.C.] testified she did not know anyone named 'Jen,' she did not have a nickname for [Petitioner], and . . . she could not and did not go the [sic] window.  Counsel also failed to establish that, in contrast to the trial here, [S.H.C.] essentially remembered nothing in prior testimony;

and (4) "to adequately object to the testimony . . . regarding [Petitioner]'s 911 call that was hearsay and had no foundation established."[43]

The PCR motion court conducted a hearing at which Petitioner presented the testimony of his trial attorney, Michael Fagras; Prinster's friend, Amanda Buechter; and Petitioner.[44]   Thereafter, the PCR motion court specifically addressed each claim in Petitioner's amended motion and denied the motion.[45]

---

[41] Pet'r PCR mot., filed June 11, 2014, PCR Legal File, Resp't Ex. F, at 7-12.

[42] Pet'r Am. PCR mot., filed Sept. 10, 2014, PCR Legal File, Resp't Ex. F, at 13-30.

[43] Pet'r Am. PCR mot., filed Sept. 10, 2014, PCR Legal File, Resp't Ex. F at 17, 18, 23, and 25.

[44] See PCR Mot. Hr'g Tr., Resp't Ex. J.

[45] Findings of Fact and Conclusions of Law under Rule 29.15 ("PCR motion court's judgment"), filed Mar. 31, 2015, PCR Legal File, Resp't Ex. F, at 31-34.

<u>Post-conviction appeal</u>

Through counsel, Petitioner pursued two points in his post-conviction appeal.[46]  Petitioner first challenged, as violating his rights to due process and the effective assistance of counsel under the Sixth and Fourteenth Amendments, the PCR motion court's denial of his ineffective assistance of trial counsel claim based on his trial attorney's failure to call Amanda Buechter as a witness.[47] For his second point, Petitioner challenged, as violating his rights to due process and the effective assistance of counsel under the Sixth and Fourteenth Amendments, the PCR motion court's denial of his ineffective trial counsel claim based on his trial attorney's failure to object to the prosecutor's cross-examination of Petitioner regarding the truthfulness of other witnesses.[48]

The Missouri Court of Appeals for the Eastern District affirmed the PCR motion court's judgment in an unpublished <u>per curiam</u> order accompanied by a memorandum sent to the parties only setting forth the reasons for the order.  <u>Harley v. State</u>, No. ED103110 (Mo. Ct. App.  July 12, 2016), Resp't Ex. I.  The Court of Appeals denied both points on their merits, concluding that Petitioner's trial attorney did not provide ineffective assistance of counsel because his performance was not deficient under the two-pronged test in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) and its progeny.  With respect to Petitioner's first point, the Court of Appeals specifically discussed Buechter's testimony, as well as Petitioner's trial attorney's testimony regarding the reasons why he did not call Buechter.[49]  The Court of Appeals then found that Buechter's

---

[46]  Pet'r Br., Resp't Ex. G at 9 and 11.

[47]  Pet'r Br., Resp't Ex. G, at 9.

[48]  Pet'r Br., Resp't Ex. G, at 11.

[49]  <u>Harley v. State</u>, No. ED103110 (Mo. Ct. App.  July 12, 2016), Resp't Ex. I at 4-5.

"testimony would [not] have provided a viable defense," in relevant part because "Buechter . . . testified that [S.H.C.] . . . told Prinster that [Petitioner] touched [S.H.C.]'s butt."[50]   Furthermore, the Court of Appeals concluded, "[r]egardless of whether the testimony created a viable defense, [Petitioner] has not overcome the presumption that the decision not to call Buechter was a matter of trial strategy."[51]

With respect to Petitioner's second point, the Court of Appeals acknowledged that Petitioner's trial attorney "could have made meritorious objections to the State's [challenged] questions, [but] failure to make meritorious objections alone does not demonstrate ineffective assistance of counsel.  Jones v. State, 784 S.W.2d 789, 793 (Mo. banc 1990)."[52]   The Court of Appeals concluded counsel's decision not to object to the prosecutor's questions was a reasonable strategic decision and that "[n]o matter how ill-fated [counsel's decision not to object] appears in hindsight, trial counsel's reasonable choice of trial strategy cannot serve as a basis for a claim of ineffective assistance of counsel."[53]   Additionally, the Court of Appeals considered trial counsel's overall performance during the prosecutor's questioning of Petitioner, and determined it "further support[ed] the presumption that the decision not to object to the specific questions at issue here was a matter of trial strategy." [54]

The Court of Appeals also decided that "there [wa]s no need . . . to address the prejudice prong" of the Strickland test with respect to either point because Petitioner "failed to satisfy the

---

[50] Harley, No. ED103110, Resp't Ex. I at 7-8.

[51] Harley, No. ED103110, Resp't Ex. I at 8.

[52] Harley, No. ED103110, Resp't Ex. I at 11.

[53] Harley, No. ED103110, Resp't Ex. I at 11.

[54] Harley, No. ED103110, Resp't Ex. I at 12.

performance prong of the <u>Strickland</u> test."[55]  The Court of Appeals issued its mandate on August 4, 2016.[56]

Petitioner then filed his pending habeas petition.

## II. Grounds for relief

Petitioner sets forth two grounds for relief in his habeas petition.  In his first ground, Petitioner contends his trial attorney provided ineffective assistance of counsel by failing to call Buechter to testify because her testimony "varied from Ms. Prinster[']s.  She would have testified to Ms. Prinster[']s drinking at the time and that she interrogated" S.H.C.  Petitioner urges "there is [a] reasonable probability that the result of the trial would have been different" if Buechter had testified.  For his second ground, Petitioner argues his trial attorney was ineffective "for failing to object when the prosecutor cross-examined [him] about the credibility of other witnesses at trial, including [S.H.C.]."  Petitioner asserts "[a] reasonably competent counsel would have objected to the prosecutor's misconduct."

Respondent counters that both of Petitioner's ineffective assistance of trial counsel claims "were properly adjudicated [on their merits] under the <u>Strickland</u> standard in state court," and the state court's decisions (1) do not contradict or unreasonably apply clearly established federal law and (2) did not result in an unreasonable determination of the facts.  Therefore, Respondent argues, this Court should deny Petitioner's petition for habeas relief under the "doubly deferential standard" applicable to such claims, citing <u>Williams v. Roper</u>, 695 F.3d 825, 831 (8th Cir. 2012)

---

[55] <u>Harley</u>, No. ED103110, Resp't Ex. I at 8, 12.

[56] <u>See</u> August 4, 2016 entry on docket sheet for <u>Harley v. State</u>, No. ED103110 (Mo. Ct. App. filed July 8, 2015) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited May 26, 2020)).

("Roper") (internal quotation marks omitted) (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 202 (2011)).

### III. Discussion

A. <u>Standard for habeas review on the merits</u>

A prisoner in custody under the judgment and sentence of a state court may seek habeas relief on the grounds his custody violates the United States Constitution. <u>See</u> 28 U.S.C. §§ 2241(c)(3), 2241(d). When considering a state prisoner's habeas petition, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), <u>see</u> 28 U.S.C. § 2254(d), to exercise "only limited and deferential review of underlying state court decisions." <u>Nash v. Russell</u>, 807 F.3d 892, 897 (8th Cir. 2015) (internal quotation marks omitted) (quoting <u>Worthington v. Roper</u>, 631 F.3d 487, 495 (8th Cir. 2011)). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication of the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000) ("<u>Taylor</u>"). If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" <u>Roper</u>, 695 F.3d at 831 (quoting

Harrington v. Richter, 562 U.S. 86, 102 (2011)).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular . . . case." Taylor, 529 U.S. at 407-09; see also id. at 413.  The test of reasonableness is an objective one. Id. at 409-10; accord White v. Woodall, 572 U.S. 415, 419 (2014).

The "clearly established Federal law" requirement of habeas review under Section 2254(d)(1) requires the habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision. Greene v. Fisher, 565 U.S. 34, 38-40 (2011) (relying on Cullen, supra); accord Taylor, 529 U.S. at 412.  State courts are not required to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Revels v. Sanders, 519 F.3d 734, 739 (8thCir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  Importantly, when reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 182.

The state court record is also significant when a federal habeas court analyzes under Section 2254(d)(2) whether a state court decision on the merits of a claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A federal habeas court "accord[s] the state . . . court substantial deference" and does not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question." Brumfield v. Cain, 576 U.S. 305, 135 S. Ct. 2269, 2277 (2015) (internal quotation marks and citation omitted).  For purposes of Section 2254(d)(2), "a state-court factual determination is not unreasonable merely because [a] federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).

Importantly, "a determination of a factual issue made by a State court [is] presumed to be correct" unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to the factual determinations made by a state court at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Likewise, federal habeas courts defer to state court credibility determinations, Smulls, 535 F.3d at 864, and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, Odem v. Hopkins, 382 F.3d 846, 846 (8th Cir. 2004).

Although the Supreme Court has not yet clarified the relationship between the "unreasonable" provision of § 2254(d)(2) and the "presumed correct" provision of § 2254(e)(1), see, e.g., Burt v. Titlow, 571 U.S. 12, 19 (2013); Velez v. Clarinda Correctional Facility, 791 F.3d 831, 834 n.1 (8th Cir. 2015), Eighth Circuit authority supports the granting of habeas relief under Section 2254(d)(2) when a petitioner provides "clear and convincing evidence that the state court's presumptively correct factual finding [that is material to its decision on the merits] lacks evidentiary support. 28 U.S.C. § 2254(e)(1)." Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006); accord Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)"). Put another way, a petitioner is entitled to relief under the AEDPA if the state court decision "at issue is based on factual determinations that could not reasonably be derived from the state court evidentiary record." Velez, 791 F.3d at 834.

B.    Ineffective assistance of trial counsel claims

15

In his habeas petition, Petitioner presents only ineffective assistance of counsel claims, claims which the Missouri Court of Appeals addressed on their merits.

### (1) Standard of review

The Sixth Amendment's guarantee of counsel is applicable to the States through the Fourteenth Amendment because it is a fundamental right and essential to a fair trial.  Gideon v. Wainwright, 372 U.S. 335, 342-45 (1963).  To establish an ineffective assistance of counsel claim, Strickland requires a showing by a petitioner that:  (1) "counsel's representation fell below an objective standard of reasonableness" ("performance prong") and (2) "the deficient performance prejudiced the defense" ("prejudice prong").  Strickland, 466 U.S. at 687, 688.  A court need not address both prongs of the Strickland test if it finds the habeas petitioner has not established one of the prongs.  Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one"); accord Osborne v. Purkett, 411 F.3d 911, 918 (8th Cir. 2005) (stating the petitioner "did not satisfy the performance [prong of the Strickland test so the court] need not consider the prejudice" prong); Odem, 382 F.3d at 851 (stating "[i]t is not necessary for [a court] to consider the prejudice [prong] of the Strickland analysis" after concluding the petitioner did not satisfy the performance prong).

As the Supreme Court has explained, under the AEDPA "[t]he pivotal question" for a federal habeas court reviewing an ineffective assistance of counsel claim that was subject to state court review on the merits, "is whether the state court's application of the Strickland standard was unreasonable."  Harrington, 562 U.S. at 101.  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is difficult."  Id. at 105.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review

16

is 'doubly' so." Id. (internal citations omitted).  Specifically, after a state court reviews the merits of an ineffective assistance of counsel claim, it is not sufficient for a federal habeas petitioner to "show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance." Bell v. Cone, 535 U.S. 685, 698–99 (2002).  Instead, a habeas court "assess[es] the state courts' assessment of counsel's performance." Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014).  Put another way, a federal habeas court views the ineffective assistance of counsel claim through two filters:  first, the court defers to the judgments of trial counsel under Strickland, 466 U.S. at 689, and then the court "defer[s] to the state courts' application of federal law to the facts of the case." Marcrum v. Luebbers, 509 F.3d 489, 501 (8th Cir. 2007).

A federal habeas petitioner "must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 699.  "A state-court decision is 'unreasonable' within the meaning of § 2254(d) only when it is 'so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Daniels v. Kelley, 881 F.3d 607, 611 (8th Cir. 2018) (quoting Harrington, 562 U.S. at 103) (alteration in original).

*(2) Merits*

As noted earlier, Petitioner challenges the Missouri Court of Appeals' decision, in Petitioner's PCR appeal, affirming the denial of Petitioner's claims his trial attorney provided ineffective assistance of counsel by failing to present Buechter as a witness at trial and failing to object to questions the prosecutor posed to Petitioner during cross-examination regarding the truthfulness of other witnesses.  The Missouri Court of Appeals concluded Petitioner failed to establish Strickland's performance prong, upon finding each aspect of Petitioner's trial attorney's challenged conduct constituted a reasonable choice of trial strategy.  The Court of Appeals further

17

concluded it "need" not address the prejudice prong of the Strickland test because Petitioner failed to satisfy the performance prong of the Strickland test.

Petitioner does not challenge the state court's decision to address only the performance prong of the Strickland test. That aspect of the Missouri Court of Appeals' decision is a correct and reasonable application of Strickland. Therefore, to resolve Petitioner's grounds for relief, the Court focuses on whether the Court of Appeals unreasonably applied the performance prong of Strickland when deciding that Petitioner's trial attorney's conduct in failing to present Buechter as a witness at trial and failing to object to the prosecutor's challenged cross-examination of Petitioner did not constitute deficient performance.

Strickland's performance prong "sets a high bar" that is satisfied "only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'" Buck v. Davis, 137 S. Ct. 759, 775 (2017) (quoting Strickland, 466 U.S. at 687); Love v. United States, 949 F.3d 406, 410 (8th Cir. 2020). Importantly, "the Sixth Amendment does not guarantee the right to perfect counsel," Burt v. Titlow, 571 U.S. 12, 24 (2013), "perfect advocacy judged with the benefit of hindsight," Yarbrough v. Gentry, 540 U.S. 1 (2003) (per curiam), or "the best representation," United States v. Davis, 406 F.3d 505, 510 (8th Cir. 2005). Rather, "[t]he Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" Strickland, 466 U.S. at 686." Buck, 137 S. Ct. at 775.

To satisfy Strickland's performance prong, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687–94); accord Kemp v. Kelley, 924 F.3d 489, 500 (8th Cir. 2019). In analyzing an attorney's performance under Strickland a court must make

every effort to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Bell v. Cone, 535 U.S. 685, 698 (2002) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

Additionally, judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689.  A court must "strongly presume" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and maintain squarely on the petitioner the "burden to show that counsel's performance was deficient."  Burt, 571 U.S. at 22–23 (quotation marks and citation omitted).

Furthermore, there is "a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy."  Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir. 2001) (citing Strickland, 466 U.S. at 689).  Counsel's strategic decisions include trial decisions other than the decision whether to plead guilty, waive a jury trial, testify on one's own behalf, and take an appeal.  United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999).  A petitioner rebuts the presumption of strategy by showing "that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgment."  Marcrum, 509 F.3d at 502.  "There [also] is a strong presumption that counsel's strategic choices were reasonable."  Forsyth v. Ault, 537 F.3d 887, 891 (8th Cir. 2008).  A petitioner's burden is not satisfied by arguing an attorney's "failure to articulate a strategic justification made defense counsel's inaction necessarily unreasonable."  Forrest v. Steele, 764 F.3d 848, 859 (8th Cir. 2014).

(a) Failure to call Buechter as a witness

In its decision affirming the denial of Petitioner's post-conviction motion after a hearing, the Missouri Court of Appeals found with respect to Petitioner's trial attorney's failure to call Buechter as a witness at trial:

[Petitioner] claims a reasonably competent attorney would have called [Buechter] to testify that Prinster was drunk when she found [S.H.C.], that [S.H.C.] said she was there to sleep and [Petitioner] had only given her a drink of water, and that Prinster repeatedly asked [S.H.C.] leading questions about "touching" until [S.H.C.] said that [Petitioner] touched her on her butt. . . . .

Buechter testified to the following at the evidentiary hearing.  She and Prinster went to a friend's house on the night in question, and Prinster had about four drinks.  When she and Prinster returned to Prinster's house, [Petitioner] came out from the back bedroom and reported they had scared him.  Buechter went to the bathroom and came out to Prinster and [Petitioner] screaming at each other and Prinster saying there was a little girl in the back room.  Buechter went to the back room and asked [S.H.C.] why she was there.  [S.H.C.] responded that she was there to go to sleep.  Buechter asked her if [Petitioner] did anything to her, and she said he had gotten her a glass of water, and she pointed to a cup of water on the bathroom sink.  Prinster then entered the room.  Prinster asked [S.H.C.] if [Petitioner] had done anything to her.  "[Prinster] kept repeating herself and [S.H.C.] kept saying no; and then [Prinster] started asking her certain body parts, if he touched her in those places."  Eventually, after extensive questioning, [S.H.C.] "pointed at her butt and said he had touched her there."  [S.H.C.] never said anything about [Petitioner] poking her.  Buechter told [Petitioner]'s trial counsel this information, and she would have provided consistent testimony had she been called as a trial witness.  She did not remember seeing [S.H.C.]'s panties, but she thought they had been taken out of [Petitioner]'s pocket and put on the bed next to her.

At the evidentiary hearing, [Petitioner]'s trial counsel testified to the following relative to his decision not to call Buechter as a witness at trial.  He met with Buechter on one or two occasions.  Buechter described Prinster as drunk on the night in question.  While trial counsel did not specifically remember that Buechter would testify that it was only after extensive questioning that [S.H.C.] told Prinster that [Petitioner] touched her and never used the word "poke," he did not doubt Buechter would have testified to that version of the events.  He did not call Buechter as a witness because her testimony would have bolstered Prinster's testimony that [S.H.C.] was under the covers of the bed and her panties were in [Petitioner]'s pocket.  He was trying as much as possible to get the idea of [S.H.C.] in bed and her panties in [Petitioner]'s pocket out of the mind of the jurors, and he thought Buechter's testimony would increase the weight of this evidence during trial.  Because of Prinster's "virulent attitude on the stand and her ability to piss just about everybody off in that Courtroom," her "vituperative comments" and his conversation with the jurors regarding Prinster following the first trial in this case,

20

> he determined that Prinster was not a credible witness.  Rather than have Buechter
> validate anything Prinster said, Counsel felt it was better to have [Petitioner] testify
> in a calm manner, which he did, and try to explain Prinster's "bizarre" behavior that
> night.

Harley v. State, No. ED103110, slip op., Resp't Ex. I, at 4-6.

The Court of Appeals concluded Buechter's testimony would not provide Petitioner a

viable defense and "[r]egardless of whether the testimony created a viable defense, [Petitioner]

ha[d] not overcome the presumption that the decision not to call Buechter was a matter of trial

strategy."  Id. at 8.   In concluding the failure to present Buechter at trial constituted a matter of

trial strategy, the Court of Appeals specifically relied on counsel's testimony that his

> strategy was to keep the idea of [S.H.C.] in bed with her panties in [Petitioner]'s
> pocket out of the mind of the jurors as much as possible, and he was concerned
> further testimony in this regard by Buechter would have increased the weight of
> this evidence during trial.  As a matter of strategy, he also determined that Prinster
> was not a credible witness and that the jury would find her distasteful, and he
> appears to have relied upon that determination when deciding how to approach her
> testimony and related testimony from other witnesses.

Id.  Because trial counsel's failure to call Buechter resulted from "[t]rial counsel's reasonable

choices of trial strategy," the Court of Appeals determined that the attorney's failure to present

Buechter at trial "cannot serve as a basis for a claim of ineffective assistance of counsel."  Id.

"A reasoned decision not to call a witness is a virtually unchallengeable decision of trial

strategy."  Rodelo-Aguilar v. United States, 596 F.3d 457, 464 (8th Cir. 2010) (internal citation

and quotation marks omitted); see also Williams v. Armontrout, 912 F.2d 924, 934 (8th Cir. 1990)

(en banc) ("Decisions relating to witness selection are normally left to counsel's judgment, and this

judgment will not be second-guessed by hindsight" (internal quotation marks and citation

omitted)).  When counsel's decision not to present a witness is "based on justifiable concerns about

the helpfulness (and potential harmfulness) of [the witness]'s testimony[,] . . . counsel's decision

[is] based on [a] risk calculation [that] does not fall outside the bounds of Strickland."  Forrest,

764 F.3d at 858-59.  Deficient performance may not exist when an attorney decides not to present the testimony of a witness whose testimony the attorney characterizes as "a reminder of" information that "would outweigh any good . . . evidence [the witness] could provide."  Cole v. Roper, 623 F.3d 1183, 1191 (8th Cir. 2010) (addressing an ineffective assistance of counsel claim arising out of the attorney's failure to present certain witnesses during the penalty phase of the petitioner's trial).

The Court of Appeals' determination that Petitioner's trial attorney's decision not to call Buechter constituted trial strategy is a finding of fact subject to the reasonableness analysis set forth in Section 2254(d)(2).  See Wood v. Allen, 558 U.S. 290, 301, 305 (2010) (holding under § 2254(d)(2) that the state court's "key factual finding" that counsel "made a strategic decision rather than a negligent omission" when deciding not to pursue and present evidence of the petitioner's mental deficiencies "was not an unreasonable determination of facts" in light of the evidence presented in the state court proceedings).  Here, the evidence presented in the state court proceedings, in particular the testimony of Petitioner's counsel and Buechter at the evidentiary hearing on Petitioner's PCR motion, supports the Court of Appeals' determination that the decision of Petitioner's trial counsel not to present Buechter resulted from "reasoned judgment" or deliberate choice,  rather than from counsel's oversight, inattention or neglect.  Id. at 301-02; Marcrum, 509 F.3d at 502.  Therefore, the Missouri Court of Appeals' characterization of this alleged failure by counsel as trial strategy is not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings under § 2254(d)(2).

This Court considers under Section 2254(d)(1), however, whether the strategic decision itself was a reasonable exercise of the attorney's professional judgment under Strickland and whether the Missouri Court of Appeals' application of Strickland was reasonable.  Wood, 558 U.S.

at 304.  The state court record establishes Petitioner's trial attorney made the decision not to present Buechter after meeting with Buechter, after analyzing Prinster's testimony and demeanor during Petitioner's first trial, and after considering the response of the jury in the first trial to Prinster. Under the circumstances, this pre-decision effort by counsel supports the reasonableness of the attorney's strategic decision.

Moreover, Petitioner's trial attorney acted strategically within the bounds of reasonable professional judgment by not calling Buechter because her testimony may have hurt Petitioner's case by emphasizing or reiterating to the jury:  (1) the presence of S.H.C. under the covers of a bed in a room where Petitioner was alone with S.H.C., (2) the presence of S.H.C.'s underwear in Petitioner's pocket, and (3) S.H.C.'s report to Prinster that Petitioner had touched S.H.C.'s "butt." Petitioner's trial attorney testified that his strategy was to "keep the idea of [S.H.C.] in bed with her panties in [Petitioner]'s pocket out of the minds of the jurors as much as possible" and to limit the "weight of [such] evidence during trial."  Counsel also testified that he focused on Prinster's credibility and demeanor during the first trial in concluding "the jury would find her distasteful," and the Missouri Court of Appeals found he "relied upon that determination when deciding how to approach her testimony and related testimony from other witnesses."  Having reviewed the state court proceedings during trial and the PCR evidentiary hearing, the Court concludes the Missouri Court of Appeals' decision was not an incorrect or unreasonable application of Strickland and was not based on an unreasonable application of the facts in light of the evidence presented in the State court proceeding under the principles of Wood.  See also Winfield v. Roper, 460 F.3d 1026, 1033–34 (8th Cir. 2006) (the petitioner's counsel's "decision not to call [the petitioner]'s friend . . . was reasonable since [the friend] had a criminal history and . . . counsel testified that he had tried to separate [the petitioner] from 'contacts like that'"); Thomas v. Bowersox, 208 F.3d 699, 701–02

(8th Cir. 2000) (agreeing with the Missouri Court of Appeals' determination that the trial attorney's decision not to call the petitioner's son as a witness "was well within the bounds of reasonable professional judgment" and concluding "it was valid trial strategy for counsel to conclude that the son's testimony would not have helped, and may well have hurt" the petitioner's case); Schlup v. Armontrout, 941 F.2d 631, 639 (8th Cir.1991) (pre-AEDPA habeas case) (the petitioner's trial counsel, who had reviewed a witness's testimony at earlier trials of the petitioner's co-defendants and concluded the witness's testimony "could be damaging" to the petitioner, was not ineffective for failing to call the witness).   The Court denies ground one.

(b)  <u>Failure to object during cross-examination of Petitioner</u>

In its decision affirming the denial of Petitioner's post-conviction motion after a hearing, the Missouri Court of Appeals found with respect to the trial attorney's failure to object during the prosecutor's challenged cross-examination of Petitioner:

> In his second point on appeal, [Petitioner] claims the motion court clearly erred in denying [Petitioner]'s claim that trial counsel was ineffective for failing to object to the State's questions to him on cross-examination regarding the truthfulness of other witnesses in that a reasonably competent attorney would have objected when the  State asked [Petitioner] to comment on the credibility of other witnesses. . . .

> Here, the following questions were directed to [Petitioner] during cross-examination without objection:

> | Q: | Okay.  So then you saw [S.H.C.], and she said, "He hurt me"? |
> |----|----|
> | A: | Correct. |
> | Q: | And you believe that to be the truth? |
> | A: | Yes. |
> | Q: | And you believe [S.H.C.] to be a truthful little girl? |
> | A: | Yes. |
> | Q: | And you had seen her before, correct? |
> | A: | Correct. |
> | Q: | So you had no reason to believe why [S.H.C.] would lie? |
> | A: | Correct. |
> | Q: | Now but yet you're saying today that what [S.H.C.] told her Mom is a lie? |

| | |
|---|---|
| A: | Correct. |
| Q: | And what she told her Dad was a lie? |
| A: | Correct. |
| Q: | And what show [sic] told the doctors and the nurses and everyone else she worked with, the forensic interviews, all of those are lies? |
| A: | Correct. |
| Q: | But yet the one story you say is the truth? |
| A: | Correct. |
| Q: | Even though you have just said [S.H.C. is] a truthful little girl, you want these people to believe what you said she said is the truth? |
| A: | Yes. |
| Q: | But she'd have no other reason to lie? |
| A: | No. |
| Q: | She's a truthful little girl? |
| A: | Yeah. |

                               . . .

| | |
|---|---|
| Q: | Okay. Now this truthful little five-year-old that you said you believed and did all of these actions because of the truth she told you, you are now saying all of those people she said you touched her was a lie? |
| A: | Correct. |

                               . . .

| | |
|---|---|
| Q: | So the fact that [S.H.C.] would have said ["you poked her in her butt with your finger"] would be a lie? |
| A: | Correct. |

At the evidentiary hearing, [Petitioner]'s trial counsel testified that he had a strategy for not objecting to the State's questions requesting comment on the credibility of other witnesses. He explained that he thought [Petitioner] was a believable witness, especially after the first trial ended in a hung jury. Trial counsel expressed concern about objecting too often during his client's own testimony. Specifically, he testified, "Sometimes you have to determine whether or not your objections are going to lead the jury to believe that you're trying to cover something up through his testimony." He further testified that he believed he could rehabilitate on re-direct examination of his witness.

In order to succeed on a claim of ineffective assistance of counsel for failure to object, a movant must show that the failure to object was not strategic and resulted in prejudice. State v. Clay, 975 S.W.2d 121, 135 (Mo. banc 1998). "If trial counsel's failure to object is based on a reasonable trial strategy, the movant cannot demonstrate counsel was ineffective." Cornelious v. State, 351 S.W.3d 36, 44 (Mo. App. W.D. 2011) (internal quotations omitted). The Missouri Supreme Court has recognized that "[i]n many instances seasoned trial counsel do not object

to otherwise improper questions or arguments for strategic purposes.  It is feared that frequent objections irritate the jury and highlight the statement complained of, resulting in more harm than good."  Clay, 975 S.W.2d at 135 (quoting State v. Tokar, 918 S.W.2d 753, 768 (Mo. banc 1996) . . . ).

Missouri law is clear that "witnesses may not be asked to give their opinion on the truth or veracity of another witness' testimony."  State v. Besher, 247 S.W.3d 135 (Mo. App. S.D. 2008).  Accordingly, trial counsel could have made meritorious objections to the State's questions at issue here.  However, failure to make meritorious objections alone does not demonstrate ineffective assistance of counsel. Jones v. State, 784 S.W.2d 789, 793 (Mo. banc 1990).  "There must be a showing that counsel's overall performance fell short of established norms and that this incompetence probably affected the result."  Id.  Here, trial counsel articulated his strategic decision not to object to the questions at issue.  He testified that he thought his client was believable, especially given the fact that the first trial ended in a hung jury, and that he chose not to object to the questions at issue because he was concerned his repeated objections would give the jury the impression the defense was trying to cover something up.  No matter how ill-fated this decision appears in hindsight, trial counsel's reasonable choice of trial strategy cannot serve as a basis for a claim of ineffective assistance of counsel.  See Shelton [v. State], 440 S.W.3d [464,] 470 [(Mo. App. E.D. 2014)].

We also note trial counsel's overall performance during [Petitioner]'s trial testimony.  During his testimony alone, trial counsel made several objections to the State's questions that were sustained, and there were two separate discussions at the judge's bench, one of which included trial counsel's request for a mistrial.  This was not a case where trial counsel was not alert or was unfamiliar with grounds for objecting; rather, trial counsel appears to have been vigorously defending [Petitioner] during [Petitioner]'s trial testimony.  See id. (finding no incompetence of counsel where there "was nothing to indicate that counsel were unfamiliar with the grounds for objection or lacking alertness," and upon review of the transcript, noting that trial counsel "conducted a vigorous defense, probing legal points in chambers, cross-examining in depth and making numerous objections").  This overall performance further supports the presumption that the decision not to object to the specific questions at issue here was a matter of trial strategy.  Because [Petitioner] failed to satisfy the first prong, the performance prong, of the Strickland test, there is no need for us to address the prejudice [prong].  The motion court did not clearly err in refusing to grant [Petitioner] post-conviction relief in this regard.

Point II denied.

Harley v. State, No. ED103110, slip op., Resp't Ex. I, at 9-12.

This Court has not been directed to or found a Supreme Court case addressing either prong

of the Strickland test in the context of an attorney's failure to make a meritorious objection to

26

cross-examination by a prosecutor either prior to or after the effective date of the AEDPA.[57]   More specifically, this Court has not been directed to or found a Supreme Court case addressing any aspect of the Strickland test under circumstances in which a petitioner's trial attorney's alleged ineffective assistance arises out of the attorney's failure to make a meritorious objection to a prosecutor's cross-examination asking a witness whether other witnesses were lying, the situation presented here.

The Court has discovered two published Eighth Circuit decisions discussing the merits of a petitioner's ineffective assistance of counsel claim based on the trial attorney's failure to object to this type of cross-examination by a prosecutor: Jenner v. Class, 79 F.3d 736 (8th Cir. 1996) and Lamar v. Graves, 326 F.3d 983 (8th Cir. 2003).[58]   In Jenner, an April 1, 1996, decision issued before the April 24, 1996, effective date of the AEDPA, the Eighth Circuit noted the state supreme court had ruled the prosecutor's challenged cross-examination asking the petitioner "whether other witnesses were lying" was "probably improper" but "not prejudicial." Jenner, 79 F.3d at 741.  The Eighth Circuit reviewed the questioning and concluded there was no prejudice after finding "the references were isolated and directed to contradictions in witness' testimony." Id.  In support of the "no prejudice" decision in Jenner, the Eighth Circuit cited its decision on direct appeal in

---

[57]  Prior to the effective date of the AEDPA, the Supreme Court addressed in the context of Strickland's prejudice prong an attorney's failure to make a meritorious objection to use of a basis for sentencing during the sentencing phase of a capital case, Fretwell v. Lockhart, 506 U.S. 364 (1993).

[58]  The Court also found two other Eighth Circuit decisions in which a petitioner presented a claim that a trial attorney provided ineffective assistance by not objecting when a prosecutor cross-examined the petitioner about whether other witnesses were lying.  See Schawitsch v. Burt, 491 F.3d 798, 801 (8th Cir. 2007) (prosecutor asked the petitioner "to comment on the truthfulness of some of the . . . witnesses"); Mansfield v. Dormire, 202 F.3d 1018, 1021 (8th Cir. 2000) (considering three ineffective assistance of trial counsel claims including one based on "counsel's failure to object to the state's cross-examination of [the petitioner] when the state asked . . . why the state's witnesses were lying").  Those decisions do not, however, discuss the claim on its merits. Schawitsch, 491 F.3d at 803-04 (claim procedurally barred from consideration on the merits); Mansfield, 202 F.3d at 1021 (stating without discussion that the petitioner "cannot prevail on the merits" of the claim, and discussing specifically the grounds of the petitioner's other two ineffective assistance of counsel claims).

United States v. Williams, 897 F.2d 1430, 1432-33 (8th Cir. 1990) ("Williams").  In Williams, the Eighth Circuit reviewed only for plain error (due to the absence of an objection by defendant) the prosecutor's challenged cross-examination which, the defendant argued, required the defendant "to impliedly call the police officers 'liars' in order to defend his innocence, and . . . implied that the prosecutor was calling him a liar."  Id.  The Williams decision did not address the defendant's challenge to the prosecutor's cross-examination in the context of an ineffective assistance of counsel claim or as a matter of federal constitutional law.  See also United States v. Foreman, 588 F.3d 1159, 1162, 1164-65 (8th Cir. 2009) (reviewing for plain error in a direct appeal the defendant's argument the prosecutor engaged in misconduct during cross-examination by asking the defendant "whether specific witnesses . . . must be 'mistaken or lying'").

In Lamar, an AEDPA case, the Eighth Circuit noted that, to support his ineffective assistance of counsel claim challenging the prosecutor's cross-examination asking "whether certain state witnesses, including police officers, were lying," the petitioner relied on cases that were "direct criminal appeals that do not rely on constitutional principles for their rulings."  Lamar, 326 F.3d at 987.  Additionally, the Eighth Circuit stated the petitioner had "not cited to nor ha[d the Eighth Circuit] found a Supreme Court case addressing this issue."  Id.  While noting it did "not necessarily condone the questions posed to [the petitioner, the Eighth Circuit] conclude[d, without discussion,] that the state court's rejection of th[is ineffective assistance of counsel] claim . . . [was] not an unreasonable application of federal law as established by relevant Supreme Court decisions."  Id.

Due to the absence of "any clearly established holding" of the Supreme Court addressing an ineffective assistance of counsel claim based on an attorney's failure to object to a prosecutor's cross-examination asking whether other witnesses lied, the Court concludes the Missouri Court of

Appeals' decision regarding this claim was not contrary to clearly established federal law.  See Woods v. Donald, 575 U.S. 312, 317 (2015) (per curiam) (because none of the Supreme Court's "cases confront 'the specific question presented by this case'" – the trial attorney's absence from the courtroom during approximately ten minutes of prosecution testimony about other defendants – the state court's decision on direct appeal rejecting the petitioner's Sixth Amendment right to effective assistance of counsel claim was not "'contrary to' any holding from th[e Supreme] Court").  Additionally, based on the doubly deferential view this Court takes of a state court's resolution of Petitioner's ineffective assistance of counsel claim, and the state court record in this case, the Court concludes that the Missouri Court of Appeals' decision on this claim was not an unreasonable application of clearly established federal law.  See Lamar, 326 F.3d at 987.  See also Harrington, 562 U.S. at 101 ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court (internal quotation marks omitted) (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

To the extent the Court should explicitly analyze as a finding of fact under Wood, 558 U.S. 290, and Section 2242(d)(2) the Missouri Court of Appeals' determination that the failure of Petitioner's trial counsel to object to the prosecutor's challenged cross-examination constituted a "strategic decision" and "a matter of trial strategy," the evidence in the state court record supports the reasonableness of the Court of Appeals' conclusion.  In particular, the Court notes Petitioner's attorney successfully objected to a similar, but direct-examination, inquiry the prosecutor made of Prinster during a pretrial hearing regarding the reliability of S.H.C.'s statements to others.  Trial Tr., Resp't Ex. A, at 68-69.  Specifically, during that hearing, the trial court sustained an objection by Petitioner's counsel to the prosecutor asking Prinster whether S.H.C. has "any reason to lie."

29

Id.  Counsel's noted objection demonstrates Petitioner's counsel's familiarity with the ability successfully to object to such an inquiry by the prosecutor, which supports the Missouri Court of Appeals' conclusion counsel's failure to object to similar inquiries by the prosecutor during trial was a deliberate or reasoned choice by counsel, rather than a matter of counsel's oversight, inattention or neglect.  Therefore, the Missouri Court of Appeals' characterization of this alleged failure by counsel as a "strategic decision" and "a matter of trial strategy" is not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings under § 2254(d)(2).

Under the circumstances, the Missouri Court of Appeals' decision that Petitioner's trial attorney's failure to object to the prosecutor's challenged cross-examination of Petitioner did not constitute deficient performance or the ineffective assistance of counsel was not contrary to or an unreasonable application of clearly established federal law and was based on a reasonable determination of the facts in light of the relevant evidence before the state courts.  The Court denies ground two.  Having denied both grounds for habeas relief on their merits, the Court denies Petitioner's petition for habeas relief.

### IV.  Certificate of appealability

A certificate of appealability is required to appeal a final order in a habeas proceeding under 28 U.S.C. § 2254.  28 U.S.C. § 2253(c); Fed. R. App. 22(b)(1).  A judge may issue a certificate of appealability ("COA") under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a constitutional right."  Tennard v. Dretke, 542 U.S. 274, 282 (2004); Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  This standard requires a petitioner to demonstrate, with respect to claims the federal habeas court resolves on the merits, that "reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong."

Slack v. McDaniel, 529 U.S. 473, 484 (2000); accord Miller-El, 537 U.S. at 338 (quoting Slack, 529 U.S. at 484).

      The Court concludes Petitioner has not made a substantial showing of the denial of any constitutional right in this Section 2254 proceeding.  Accordingly, the Court will not issue a COA with respect to any aspect of the denial of Petitioner's petition.

### V. Conclusion

      After careful consideration,

      **IT IS HEREBY ORDERED** that Stanley Payne, the present Warden of the ERDCC, is **SUBSTITUTED** as the only Respondent in this habeas proceeding.

      **IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

      **IT IS FINALLY ORDERED** that the Court will not issue a Certificate of Appealability.

      A separate judgment in accordance with this Memorandum and Order is entered this same date.

                                                        PATRICIA L. COHEN
                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of June, 2020